Stovall *v.* Austin.

W. H. STOVALL *et al. v.* J. A. AUSTIN *et al.*

1. CURTESY. *When it does not attach to wife's separate estate.* Where a testator devises real estate to his daughters for their sole and separate use, to pass at their death directly to their children, the daughters' husbands are not entitled to curtesy.

2. TAXES. *Life tenant.* It is the duty of a life tenant to keep down the taxes on real estate, and a sale of it for unpaid taxes would only reach the life estate.

FROM SHELBY.

Appeal from the Chancery Court at Memphis.   W. W. McDOWELL, Ch.

W. GREGORY  for complainants.

CLAPP & BEARD  for defendants.

COOPER, J., delivered the opinion of the court.

John W. Fowler died in Shelby county, on January 12, 1870, leaving a widow, Rosa Fowler, and two daughters, Louise I., then intermarried with the complainant, W. H. Stovall, and Caroline A. Fowler, who

afterward married the complainant, J. A. Austin. Louise I. Stovall died on July 31, 1875, leaving one child, the defendant, John W. Stovall, an infant, without any general guardian. On March 21, 1879, Caroline A. Austin died, leaving three children, the defendants, J. A. Austin, Jr., Louise I. Austin and Willis F. Austin, all infants, for whom their father, complainant J. A. Austin, is general guardian. John W. Fowler left a will, which was duly admitted to probate after his death, giving his property to his widow and his two children, with contingent remainders in favor of their children, and in the absence of children, in favor of the survivors or survivor of the first devisees. The realty devised consisted principally of unimproved realty in the city of Memphis, the taxes on which have since amounted to about $15,000, which taxes have been paid by the complainants, Stovall and Austin. The bill was filed September 8, 1884, by these parties and the widow against the infant children of the deceased daughters, for a construction of the will, for a settlement of the rights of the parties in the matter of taxes, and for a sale of the land as manifestly to the interest of all parties. The land of the testator lay in one body, cut awkwardly by an avenue or street. In order to get rid of this avenue, and to secure the running of streets through the property, the widow and the daughters of the testator, with the husbands of the latter, bought some adjacent land, known as the Greer land, for $4,000, which consideration was paid by the widow and the sons-in-law. The title was taken to complainant, W. H. Stovall, in whom it still partly re-

mains, in trust, as he concedes, for the testator's widow and daughters. Shortly after the purchase, the Fowler land and the Greer land, as one body, were laid off into lots, with suitable streets, some of the lots containing unequal portions of the Fowler and Greer land. This purchase was made May 19, 1871, and on November 28th, of the same year, the husbands and their wives and the widow joined in a partition deed, undertaking to divide these lots equally among themselves according to their respective interests under the testator's will, and treating the Greer land as belonging equally to the widow and the testator's two daughters. One object of the bill is to obtain for the complainants reimbursement for the purchase price of the Greer land, upon the ground that it was understood and agreed by the parties that they should be repaid the outlay by the Fowler estate. The infants were personally served with process, and appear by guardian *ad litem.* During the progress of the cause, the widow, on December 17, 1884, sold out her interest in the property involved to her co-complainants, but not her right to reimbursement for the Greer purchase, if so adjudged. The chancellor, on final hearing, construed the will, declared the rights of the parties, and ordered a sale of the land. Both the complainants and defendants have appealed, opening the whole case.

The will of the testator as probated consists of an original will executed December 30, 1868, and a codicil published January 10, 1870, two days before the testator's death. The provisions of these instruments bearing on the matters of controversy are as follows:

Item sixth of the will: "I give unto my daughters aforesaid, each, one hundred feet of ground on Marshall avenue, or Pigeon Roost road, running back to Monroe street. This I give separate and apart from the use and control of their husbands, but should they wish to dispose of the same they may do so, provided the proceeds thereof are reinvested in some other real estate, which shall also be beyond the use and control of their husbands. The aforesaid mentioned ground shall be laid off on the west side of my residence, commencing at the west line and embracing the lot I purchased of F. B. Smith."

Seventh. "I give to my beloved wife, Rosa, my residence, commencing on the eastern boundary of the two hundred feet given to my daughters as above, and embracing my entire front yard, running back to Monroe street. This I give separate and apart from the use and control of her husband should she marry again. But should she wish to dispose of the same she may do so, provided the proceeds are reinvested in other real estate, free from the control of her husband."

Eighth. "Should my said wife, Rosa, or either of my said daughters die, leaving no living child, then and in that case, the survivors or survivor (of the bequest of real estate) shall inherit the same."

Ninth. "The balance of my real estate lying in Shelby county, Tennessee, I give to my said wife, Rosa, and my daughters, Louise Irene Stovall and Caroline Azalia Fowler, to be divided equally between them, share and share alike."

Item three of the codicil is: "The real estate given

to my wife, Rosa, including the homestead, I give only
during her lifetime, provided she leaves surviving her
either of my daughters, Louise I. or Caroline Azalia,
and at the death of my said wife, her interest in the
real estate shall go to my said daughters, Louise I.
and Caroline Azalia, absolutely in fee simple."

Fourth. "In the event of the death of either of
my said daughters leaving a child or children, it is
my wish and will that such child or children shall
succeed to, and take all the rights of its or their
mother in and to my property, and under my will
and this codicil."

Fifth. "In the event of the death of either of my
said daughters leaving no child or grandchild surviving
her, it is my wish and will that her interest or por-
tion of my real estate go to my other daughter and
my dear wife, Rosa, to be equally divided between
them, my said wife taking her part or portion thereof
for life only, and the daughter taking hers absolutely
in fee simple."

Sixth. "In the event of the death of both of my
said daughters leaving no child or grandchild surviving
them, then, and in that event, it is my wish and will
that all my real estate go and belong to my dearly
beloved wife, Rosa Fowler, absolutely in fee simple,
to be disposed of by her by will if she so desires."

Seventh. "The real estate given herein to my said
daughters, Louise I. and Caroline Azalia, and to my
wife, Rosa, I give to them and each and every of
them to their sole, separate and exclusive use, free
and beyond the control and liabilities of their, or any

of their husbands. Yet I give them the power and privilege of exchanging said real estate for other real estate, or of selling said estate and investing the proceeds of sale thereof in other real estate, the estate so to be acquired to be held on the same terms and conditions as that which is herein bequeathed."

The depreciation of real estate in the city of Memphis, and the accumulation of taxes on the realty in dispute, since the death of the testator, have brought about this curious result, that the guardian *ad litem* for the infant defendants has felt it his duty to contend, on behalf of his wards, that their respective fathers are tenants by the curtesy of the lands devised by the will to the daughters, the devises being to them in fee. His contention is that the fourth item of the codicil, when read in connection with the third item, relates only to the realty given to the testator's widow, which, by said third item, is to go over in the contingencies mentioned. But the whole tenor of the codicil is to limit the estates given by the will to the widow and children, and make them separate estates. And the fourth item, in the clearest terms, in the event of the daughters dying leaving a child or children provides that such child or children shall take all the rights of the mother "in and to my property and under my will and codicil." All of the realty so devised, either under the will or codicil, to a daughter clearly passes to her offspring at her death. The contingency contemplated having happened as to both daughters, the realty which Mrs. Stovall took under the will passed to .the defendant, her son, and the

realty which Mrs. Austin took under the will passed to the defendants, her three children. And inasmuch as by the seventh clause of the codicil the estates of the daughters are settled to their sole and separate use, and pass directly under the will to the children, the fathers are not entitled to curtesy: *Beecher* v. *Hicks*, 7 Lea, 207. The result is that the taxes accruing on the land during the life of the tenant for life, and paid by the husband, would not be a charge against the children, it being the duty of the tenant for life to keep down taxes. Taxes subsequently accruing would fall upon the child or children, and the father is entitled for payments thereof to be reimbursed out of the estate of the child or children.

The able special chancellor, whose opinion is copied in the transcript, says that the complainants, Stovall and Austin, take under their deed from the widow her life estate in the property devised to her, and he adds: "I do not understand them to claim any further right as to this interest, and clearly they have none." And the learned counsel of the complainants says that his clients are well satisfied with the careful and able opinion of the special chancellor. In this view, these complainants would be required to keep down the taxes on the lands thus held during the existence of their life estate.

The claim of the complainants to reimbursement of the purchase money of the Greer land is put upon the ground that the purchase was made for the benefit of the Fowler estate, with the knowledge, approval and consent of the devisees, and with the understanding

that the money was to be reimbursed by the estate. But the executor of the testator's estate had clearly no power to make such a purchase, nor of course to use the means of the estate in paying the consideration, or reimbursing those who did pay it. And the married women and infants could make no contract on the subject which would be binding on them or their estates. If the complainant, Stovall, had simply taken the title to the land to himself, and held it, he might have resisted a divestiture of the title out of him by the devisees, except Rosa, who paid her share of the price, until he and Austin were reimbursed the two-thirds of the purchase money paid by them. But within a few months after the purchase, these complainants with their wives and the widow joined in a partition of these lands, in connection with the Fowler lands, whereby Stovall, his wife and the widow conveyed to Austin's wife and her heirs, and Austin, his wife and the widow conveyed to Stovall's wife and her heirs, and Stovall and wife and Austin and wife conveyed to the widow definite portions of the land, as divided into lots, in severalty, "to be held and owned in accord with all the terms, conditions and limitations contained in the will of the said John W. Fowler, deceased." This was a settlement by the husbands on their wives, to their sole and separate use, of the lands conveyed to them severally for their life, with remainder to their offspring respectively. The husbands and the widow thereby lost all claim to reimbursement. Upon the death of each wife her share of the land thus allotted passed directly to her child

or children in fee, neither husband being entitled to
an estate by curtesy. The widow's share of these
lands belongs to the complainants, Stovall and Austin,
for the life of the widow, under their deed from her.
The taxes upon all this property would stand like the
taxes on the property devised by the will, and must
be borne accordingly.

The partition deed, so far as the Greer land is con-
cerned, would continue binding on the defendants after
the death of their mother, because they acquire their
only title to that land under it. And, although not
literally within the language of item seven of the cod-
icil, we think the partition is sufficiently within its
spirit, being in fact an exchange of real estate held
in common for other real estate in severalty, to ren-
der it binding on the children. A new partition has
not been asked for, and it would probably be a useless
trouble and expense to require the parties to institute
new proceedings for the purpose, the result being com-
plicated by the fact that some of the lots have been
sold in accordance with the plan and existing partition.

The chancellor ordered a sale of the lots in advance
of a construction of the will, which was improper. It is
very clear, however, that a sale of some of the lots is
absolutely necessary to pay taxes, and that a sale of
other lots is manifestly to the interest of the infants,
both to raise an income for their support and educa-
tion, and to improve other portions of the property.
The proof shows that the defendants have each only a
small amount of other property. The defendants are
now clothed with the absolute title to all the property

descended to them from their mothers. Such property should be first sold. At present, it would not be to the interest of the minors, upon the facts now in the record, to sell any of the lots in which they have a remainder estate after the death of the widow. The complainants are bound to keep down the taxes on these lots during her life, and any sale which might be made of them for taxes would only reach the life estate: *City of Nashville* v. *Cowan,* 10 Lea, 209, 213. The chancellor's decree of sale, thus modified for the present, may be affirmed, with leave to renew the application for sale upon a proper showing.

A decree will be drawn up in accordance with this opinion. The costs of this court will be paid by the complainants, Stovall and Austin, equally. The costs below will abide the order of the chancellor. And the cause will be remanded for further proceedings.